IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| RAYMOND LEROY STEELE, | ) | Civil No.: 3:16-cv-01736-JE |
|---|---|---|
| | ) | |
| Plaintiff, | ) | OPINION AND |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

       Martin R. Cohen
       4040 Douglas Way
       P.O. Box 1229
       Lake Oswego, OR 97035

              Attorney for Plaintiff


       Billy J. Williams, U.S. Attorney
       Renata Gowie, Asst. U.S. Attorney
       1000 S.W. 3rd Avenue, Suite 600
       Portland, OR 97204


       Sarah Martin
       Special Asst. U.S. Attorney
       Office of the General Counsel
       Social Security Administration
       701 5th Avenue, Suite 2900 M/S 221 A
       Seattle, WA 98104-7075


              Attorneys for Defendants

JELDERKS, Magistrate Judge:

Plaintiff Raymond Steele brings this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Disability Insurance Benefits (DIB) under the Social Security Act (the Act). For the reasons that follow, the Commissioner's decision is reversed and this case is remanded for further proceedings.

## Procedural Background

Plaintiff filed his application for a period of disability and DIB on January 23, 2013, alleging disability as of November 15, 2012. The Commissioner denied his application initially and upon reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). An administrative hearing was held on November 25, 2014, before ALJ Vadim Mozyrsky. In a decision dated March 26, 2015, the ALJ found that Plaintiff was not disabled within the meaning of the Act. The ALJ's decision became the final decision of the Commissioner on July 14, 2016, when the Appeals Council denied Plaintiff's request for review. Plaintiff now appeals to this Court for review of the Commissioner's final decision.

## Factual Background

Plaintiff was born in 1954 and was 60 years old at the time of the ALJ's decision. He completed two years of college and attended vocational rehabilitation training. He is a military veteran and has past relevant work as a structural steel inspector and quality control technician.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520. The five step sequential inquiry is summarized below, as described in *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant has one or more severe impairment(s), the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that meets a listing is presumed disabled under the Act. If the claimant's impairment does not meet or equal an impairment listed in the listings, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do past relevant work, the Commissioner's evaluation of claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that claimant is able to do. The Commissioner may satisfy this

burden through the testimony of a vocational expert (VE), or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant is able to do, the claimant is not disabled. If the Commissioner does not meet the burden, the claimant is disabled. 20 C.F.R. § 404.1520(g)(1).

At Steps One through Four of the sequential inquiry, the burden of proof is on the claimant. *Tackett*, 180 F.3d at 1098. At step five, the burden shifts to the Commissioner to show the claimant can perform jobs that exist in significant numbers in the national economy. *Id.*

## **ALJ's Decision**

As an initial matter, the ALJ found that Plaintiff met the insured status requirements through December 31, 2017.

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 15, 2012, the alleged onset date.

At the second step, the ALJ found that Plaintiff had the following severe impairments: hearing loss, tinnitus, asthma, osteoarthritis, and degenerative disc disease.

At the third step, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity (RFC). He found Plaintiff retained the functional capacity to:

> perform medium work . . . except the claimant can occasionally reach overhead bilaterally and frequently handle bilaterally. He can occasionally climb ladders and scaffolds, kneel, crouch and crawl. He can frequently balance and stoop. He should have no more than concentrated exposure to airborne irritants, such as

gases, fumes and odors. The claimant is limited to work environments with a
moderate noise level.

Tr. 20. In making his determination, the ALJ found that Plaintiff's statements concerning the

intensity, persistence and limiting effects of his symptoms were not entirely credible.

At the fourth step of the disability analysis, the ALJ found that Plaintiff was unable to

perform any of his past relevant work.

At the fifth step, the ALJ found that Plaintiff could perform other jobs that existed in

significant numbers in the national economy. Based upon testimony from the VE, the ALJ cited

industrial cleaner and lab equipment cleaner as representative of the work Plaintiff could

perform. Having concluded that Plaintiff could perform other work, the ALJ found Plaintiff had

not been under a disability within the meaning of the Act from November 15, 2012 through the

date of his decision.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which. . . has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A). Claimants bear the initial burden of establishing disability. *Roberts v. Shalala*,

66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). The Commissioner bears

the burden of developing the record, *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991),

and of establishing that a claimant can perform "other work" at Step Five of the disability

analysis process. *Tackett*, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole. 42

U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial

evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53

F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the

Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 771 (9th Cir. 1986). The

Commissioner's decision must be upheld if "the evidence is susceptible to more than one rational

interpretation." *Andrews*, 53 F.3d at 1039–40.

## Discussion

Plaintiff contends that the ALJ erred in his Step Five finding that Plaintiff was able to

perform other work, failed to properly consider Plaintiff's Veterans Administration (VA)

disability rating, erred in not finding Plaintiff's post-traumatic stress disorder (PTSD) to be

severe at Step Two, and failed to provide clear and convincing reasons supported by substantial

evidence to discount Plaintiff's subjective symptom testimony.

## I. Plaintiff's VA Disability Rating

Plaintiff was rated by the VA as 60% disabled overall due to impaired hearing, tinnitus

and PTSD with 30% of that rating attributed to PTSD.[1] The Commissioner concedes that the VA

determined that Plaintiff met the criteria for PTSD but argues that this is irrelevant since the ALJ

found that, although it was non-severe, Plaintiff's PTSD was a medically determinable

impairment. Plaintiff argues that the ALJ failed to give persuasive, specific and valid reasons for

discounting the VA disability rating.

An ALJ must ordinarily give great weight to a VA determination of disability. *McCartey*

*v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). "While a VA disability decision 'does not

necessarily compel the SSA to reach an identical result, the ALJ must consider the VA's findings

---

[1] Plaintiff's disability rating was, at some point, increased to 70% disabled overall with 30% of his disability rating attributed to PTSD. Tr. 901.

in reaching his decision' because of the similarities between the VA disability program and the Social Security disability program." *Hiler v. Astrue*, 687 F.3d 1208, 1211 (9th Cir. 2012) (quoting *McCartey*, 298 F.3d at 1075). However, because the VA criteria for determining disability are not identical to those of the SSA, "the ALJ may give *less weight* to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* (emphasis in original).

In this case, the ALJ found the VA's disability determination to be "informational" but not "persuasive evidence that [Plaintiff] is incapable of performing work consistent with the residual functional capacity reached [by the ALJ]." Tr. 21. The ALJ asserted that the VA had not reviewed the record that was before the ALJ and that the Department of Veterans Affairs and the Social Security Administration define "disability" differently. Tr. 21.

The second reason provided by the ALJ for discounting the weight given to the VA's disability determination was insufficient. The difference in standards between the two agencies allows an ALJ to give less weight to the VA's determination if he provides persuasive, specific, valid reasons for doing so that are supported by the record, but it is not, in itself, a sufficient reason to discount the VA's determination. *See McCartey*, 298 F.3d at 1076; *see also Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 695 (9th Cir. 2009)("Insofar as the ALJ distinguished the VA's disability rating on the general ground that the VA and SSA disability inquiries are different, her analysis fell afoul of *McCartey.*"); *Underhill v. Berryhill*, 685 F. App'x. 522 (9th Cir. 2017) (unpublished) (concluding that the fact that the rating system used by the VA is not the same as the system used by the Social Security Administration, is not a valid reason to discount the VA's disability rating).

Nevertheless, the ALJ did provide another reason which satisfied the requirements of *McCartey* by noting that the record on which the VA based its determination was different than that before the ALJ. As Plaintiff points out, the VA was his primary provider and its disability evaluation reports reflect that evaluators also had access to the few records of Plaintiff's visits outside the VA. However, as the Commissioner notes, the ALJ had the benefit of not just the medical records, but Plaintiff's testimony, his written function reports and other statements to the Agency, the opinions of State agency medical reviewers, lay witness evidence, and the VE's testimony at the hearing. Thus, the ALJ was able to rely on a broader record in making his determination and properly provided this reason as a basis for giving the VA's disability determination less weight. Accordingly, the ALJ did not err in not giving the VA's determination "great weight."

**II. <u>Step Two Findings</u>**

As noted above, Plaintiff asserts that the ALJ erred in failing to find Plaintiff's PTSD was a severe impairment at Step Two. Plaintiff argues that this error was based on the ALJ's failure to properly consider his VA disability rating. As a subset of this argument, Plaintiff also appears to object to the ALJ's evaluation of the medical evidence provided by VA psychologist, Mark Dillon. Upon review of the record, the Court concludes that, although the ALJ properly discounted the VA's disability rating, substantial evidence does not support the ALJ's Step Two conclusion.

**A. Standards**

An impairment or combination of impairments is considered "severe" at Step Two if it significantly limits a claimant's ability to perform basic work activities. SSR 96–3p. An impairment is not severe only if it is a slight abnormality that has no more than a minimal effect on the ability to do such activities. *Id.* The "severe impairment" analysis is a "*de minimis*

screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting SSR 85–28).

To evaluate the severity of a mental impairment, the ALJ must follow a special psychiatric review technique. 20 C.F.R. § 404.1520a. That technique requires the ALJ to rate the degree of a claimant's limitations in four broad functional areas – the "B" criteria. *Id.*[2] The limitations identified in the "B" criteria are used to rate the severity of mental impairments at Steps 2 and 3. If the ALJ rates the claimant's limitations as "none" or "mild," the Agency "will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." *Id.*

Here, the ALJ rated Plaintiff's degree of limitation in the four functional areas and determined that Plaintiff had only "mild" limitations in each of the categories and no periods of decompensation. The ALJ thus concluded that Plaintiff's mental impairments were not severe.

**B. Analysis**

Plaintiff's treating psychologist, Dr. Dillon, opined that Plaintiff's PTSD caused "significant distress or impairment in social, occupational, or other important areas of functioning." Tr. 807. The Commissioner argues that Dr. Dillon's opinion that PTSD would cause distress in any one of several areas of functioning is not persuasive evidence that Plaintiff's work activities would be affected by PTSD. However, Dr. Dillon's records also

---

[2] At the time the ALJ issued his decision, the regulations defined these areas as: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 20 C.F.R. §404.1520a(c)(3) (2011). Amendments to the regulations effective January 17, 2017, now identify the four broad functional areas as 1) understand, remember, or apply information; 2)interact with others; 3)concentrate, persist, or maintain pace; and 4)adapt or manage oneself . See 20 C.F.R. § 404.1520a(c)(3) (2017).

indicate that Plaintiff's symptoms included "irritable behavior and angry outbursts" and that Plaintiff's "temper is a mild to moderate work barrier, but he would be able to work in a loosely supervised environment that had minimal interactions with the public." Tr. 805-806. Dr. Dillon also opined that, although Plaintiff was "generally functioning satisfactorily, with normal routine behavior self-care and conversation," his mental diagnoses would cause an "occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks." Tr. 803. The ALJ made no reference to these excerpts of Dr. Dillon's evaluation but cited to other portions of the report as "persuasive evidence that the claimant does not have a severe mental impairment." Tr. 24. At most, this demonstrates a selective reading of the record that fails to provide the requisite substantial evidence to support the ALJ's Step Two determination.

Regardless of whether the evidence is ultimately sufficient to establish that Plaintiff is disabled within the meaning of the Act, it is sufficient to satisfy the *de minimis* threshold of a "severe" impairment at Step Two of the sequential evaluation. Having concluded that the ALJ erred at Step Two in omitting Plaintiff's PTSD, the Court must then turn to the question of whether that error resulted in prejudice to Plaintiff in the subsequent steps of the sequential evaluation process. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

## C. Effect of Error

An ALJ's error in the severity determination at Step Two is harmless where the ALJ resolves Step Two in a claimant's favor and considers any limitations posed by the omitted impairment in his subsequent evaluation. *Burch*, 400 F.3d at 682. As part of that subsequent evaluation, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). The RFC is the maximum a claimant can do despite his limitations. 20 C.F.R. § 404.1545. In

assessing an RFC, an ALJ is bound to consider limitations and restrictions imposed by *all* of an individual's impairments, even those deemed not severe. *Burch,* 400 F.3d at 683 (citing SSR 96-8p); 20 C.F.R. § 404.1545(a)(2). Thus, even if the ALJ did not err in determining that Plaintiff's PTSD was non-severe, he was, nevertheless required to consider limitations imposed by that impairment.

In addition, in order to be accurate, an ALJ's vocational hypothetical presented to a VE must set out all of a claimant's impairments and limitations. *E.g., Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir.1984). The ALJ's depiction of a claimant's limitations must be "accurate, detailed, and supported by the medical record." *Tackett,* 180 F.3d at 1101. If the assumptions set out in the hypothetical are not supported by the record, a VE's conclusion that a claimant can work does not have evidentiary value. *Gallant,* 753 F.3d at 1456.

Here, the ALJ assessed no limitations related to Plaintiff's mental impairments as part of his RFC determination. Notably, the ALJ found the mental health assessments of the Agency consultants to be consistent with the record and of "significant persuasive value." He then stated that the RFC determination incorporated their assessments. Tr. 25. However, despite the Agency consultants' and the ALJ's own conclusions that Plaintiff experienced mild limitations in all three functional areas (Tr. 19, 79, 94); multiple references in the record to Plaintiff experiencing outbursts of anger (Tr. 362-364, 870, 898); Dr. Dillon's opinion that Plaintiff's temper was a "mild to moderate work barrier" and that he should have minimal interaction with the public within his work environment (Tr. 805-806); and Plaintiff's testimony regarding his anger issues at work (Tr. 40-42), there is neither a discussion of how the evidence in the record pertaining to Plaintiff's mental impairments are reflected in the RFC nor why the RFC should not reflect any limitations from those impairments.

In Social Security Ruling 85–16, the Commissioner describes the issues that must be "considered when an individual with a mental impairment requires an assessment of the residual functional capacity ... in order to determine the individual's capacity to engage in basic work-related activities." Those issues include depression, withdrawn behavior, anxiety, tension, activities of daily living, the ability to relate to others and the ability to function in a work-like situation. SSR 85–16.

The record contains ample evidence supporting the conclusion that Plaintiff's mental impairments imposed at least some level limitation on his ability to interact with others and function in a work-like setting. Plaintiff's outbursts of anger, which the ALJ acknowledged as occurring, are just such the type of issue identified in SSR 85–16 as potentially affecting Plaintiff's ability to engage in "basic work-related activities." Accordingly, the ALJ's failure to consider or incorporate any effects of Plaintiff's mental impairments in his RFC assessment or the hypotheticals posed to the VE was error. This error resulted in prejudice to the Plaintiff at Steps Four and Five of the ALJ's analysis and was, therefore, not harmless. Thus, remand is warranted.

**III. Plaintiff's Subjective Symptom Testimony**

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons, supported by substantial evidence, for finding that his subjective symptom allegations were not fully credible.

**A. Standards**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (quoting *Smolen*, 80 F.3d at 1281). "The clear and convincing standard is the most demanding required in Social Security cases." *Id.* at 1015 (citations omitted). Therefore, an ALJ "may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick*, 157 F.3d at 722.

At the time of the ALJ's decision, Social Security Ruling ("SSR") 96-7p, *available at* 1996 WL 374186 (July 2, 1996), was in effect and provided that ALJs were to make a finding on the credibility of a claimant's statements about pain or other symptoms and its functional effects, and listed relevant factors that were to be considered. In March 2016, that ruling was superseded by SSR 16-3p, *available at* 2016 WL 1119029 (Mar. 16, 2016). Under SSR 16-3p the term "credibility" was eliminated from the Agency's sub-regulatory policy and ALJs were no longer tasked with making an overarching credibility determination. *Id.* Instead, ALJs are to "limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments." *Id.* at *10. Further, it is "not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered . . . .'" *Id.* at *9. Rather, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." *Id.* Thus, "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." *Id.* at *10.

The ALJ's decision in this case was issued before SSR 16-3p became effective, and the Ninth Circuit has not expressly ruled on whether SSR 16-3p applies retroactively. This Court has previously held that SSR 16-3p is a clarification of sub-regulatory policy rather than a new policy and thus was appropriately applied retroactively. *See, e.g.*, *Hanson v. Colvin*, No. 3:15-cv-01974-JE, 2017 WL 2432159, at *7 (D. Or. May 2, 2017) (applying SSR 16-3p retroactively); *Andre v. Colvin*, No. 6:14-cv-02009-JE (D. Or. Oct. 13, 2016) (same). The Ninth Circuit recently stated that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended) (quoting SSR 16-3p) (brackets omitted). After the Ninth Circuit issued its decision in *Trevizo*, SSR 16-3p was republished, changing the prior version's "effective date" term to "applicable date," and explaining that it was not intended that Agency adjudicators apply SSR 16-3p to determinations made before March 29, 2016. SSR 16-3p, *available at* 2017 WL 5180304 at *1 (Oct. 25, 2017).

The relevant factors an ALJ must consider are essentially the same under either ruling: when evaluating a claimant's subjective symptom testimony, an ALJ must consider the entire record, including the claimant's activities of daily living ("ADLs"); the location, duration, frequency, and intensity of the claimant's pain or other symptoms; medications taken and their effectiveness; treatment other than medication; measures other than treatment used to relieve pain or other symptoms; and "other factors concerning the individual's functional limitations and

restrictions due to pain or other symptoms." 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p; SSR 16-3p.

Based on the guidance set forth in the republished version of SSR 16-3p, this Court will not find automatic error in cases decided on or before March 28, 2016, solely because an ALJ's assessment of subjective symptom statements speaks in terms of "credibility." SSR 16-3p. However, findings that are premised exclusively on a claimant's apparent character for truthfulness, rather than the listed factors, may constitute error. *Trevizo*, 871 F.3d at 678 n.5; *see Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (general credibility findings are insufficient) (citations omitted). And, as has long been the rule, if substantial evidence supports the ALJ's determination, it may be upheld even if some of the reasons cited by the ALJ are erroneous. *Carmickle v. Comm'r of Sec. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

**B. Analysis**

Plaintiff argues that the ALJ offered only a "blanket, non-specific credibility finding." Pl. Br. 18. I disagree. The ALJ offered at least four distinct reasons as a basis for finding Plaintiff's testimony "not entirely credible." In his discussion of Plaintiff's credibility he specifically addressed Plaintiff's work history, inconsistencies between the medical record and Plaintiff's testimony, Plaintiff's activities of daily living, and a history of routine and conservative care. Tr. 20-24. These may all serve as legally sufficient reasons for finding a Plaintiff's testimony less than fully credible. *See Tommasetti v. Astrue,* 533 F.3d 1035, 1040 (9th Cir. 2008)(claimant's history of routine and conservative treatment and reporting that alleged impairment was not the reason for not working were permissible bases for discounting credibility regarding severity of symptoms); *Molina v. Astrue,* 674 F.3d 1104, 1112–14 (9th Cir.

2012)(affirming ALJ's decision to discount claimant's testimony based on, inter alia, inconsistencies with the medical evidence and with activities of daily living).

Plaintiff, here, failed to identify or challenge the ALJ's reasons for discounting his subjective symptom testimony with any specificity. Under the circumstances, the ALJ's determination regarding Plaintiff's subjective symptom testimony must be upheld. See *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (courts will not consider matters not specifically argued in opening brief).

**IV. <u>Step Five Finding</u>**

Plaintiff contends that the ALJ's Step Five finding that he could perform other work was in error and not based on substantial evidence. He asserts that the VE's testimony was "confused, nonresponsive," and "uncertain." Pl. Brief at 12. Plaintiff further argues that the limitations in the RFC that he have "no more than concentrated exposure to airborne irritants, such as gases, fumes, and odors" preclude his ability to perform the jobs of "industrial cleaner" and "lab equipment cleaner" identified by the ALJ as examples of work Plaintiff could perform.

The Court agrees that the ALJ's phrase "no more than concentrated exposure" is less than clear. The Court also notes that the exchange between the ALJ, Plaintiff's counsel and the VE at the administrative hearing did not, as is unfortunately often the case, track along a single, logical route. However, upon a thorough review of the hearing transcript, I conclude that the ALJ did not err in finding that, based on the RFC as set forth in the decision, Plaintiff could perform the work of industrial cleaner and laboratory equipment cleaner.

The first hypothetical the ALJ posed to the VE described an individual who, along with other limitations, would be "precluded from any concentrated exposure to airborne irritants such as dust, gases, fumes and so forth." Tr. 61. The VE named industrial cleaner, DOT (Dictionary

of Occupational Titles) code 381.687-018, and laboratory equipment cleaner, DOT code

381.687-022 and dishwasher, DOT code 318.687-010 as examples of work such an individual

could perform. Tr. 62. The VE testified that her testimony was consistent with the DOT and/or

her experience. Id. The ALJ then modified the hypothetical to add a limitation that jobsite noise

must be, at most moderate. Tr. 63. The VE testified that this would eliminate the dishwasher

position. Id.

Plaintiff's counsel later asked the VE if a person who needed to "avoid dust and fumes"

would be able to do the job of industrial cleaner. Tr. 67-68. The VE testified that the DOT

indicated that environmental conditions, with the exception of occasional wet or humid

conditions, were not present for the industrial cleaner. In response to questioning from Plaintiff's

attorney, she further testified that, based on her experience, a person in the job of industrial

cleaner would be using cleaning chemicals. Tr. 68.

The ALJ then asked the VE whether there were jobs that did "not involve being around

any kind of fumes, dust, gases, odors, cleaning chemicals . . ." Tr. 69. The VE responded that

"bagger" was a job that fit that hypothetical but, in response to the attorney's questions, she went

on to testify that an additional limitation to occasional contact with co-workers, supervisors and

the general public would preclude the bagger job. Id. As to the jobs of lab equipment cleaner and

dishwasher, the VE testified that, according to the DOT, the only environment condition would

be frequent exposure to wet and humid conditions. Tr. 70.

Plaintiff advances several arguments, none of which are persuasive. First, Plaintiff relies

on *Embrey v. Bowen*, 849 F2d 418, 423 (9th Cir. 1988), for the proposition that, on its own, a

vocational hypothetical presented in a hearing that does not match the RFC in the decision,

constitutes reversible error. However, the court in *Embrey* held that remand was warranted

based on the commonly accepted principle that if the ALJ does not set out in the hypothetical all of a claimant's limitations that are supported by the record, a VE's conclusion that a claimant can work does not have evidentiary value. *See, e.g., Gallant,* 753 F.3d at 1456; *Tackett,* 180 F.3d at 1101.

As noted above, the RFC ultimately set out in the ALJ's decision limited Plaintiff to "<u>no more than</u> concentrated exposure to airborne irritants, such as gases, fumes, and odors." A reasonable interpretation of "no more than concentrated," directs that it is at least an equal, if not less restrictive, limitation than a preclusion from "any concentration," which is the language the ALJ used in the hypothetical that evoked the industrial cleaner and laboratory equipment cleaner occupation responses from the VE. Thus, if the VE's testimony is that a person who must avoid any concentrated exposure can still perform these two jobs, then it necessarily follows that an individual with a lesser limitation to such environmental conditions would also be able to perform them.

Although the change of verbiage here from "any concentrated exposure" to "no more than concentrated exposure," muddles things somewhat, it does not constitute an omission of a limitation supported by the record. Especially in light of the fact that the limitation in the hypothetical was, if anything, more restrictive than that in the RFC and still resulted in the VE's testimony that Plaintiff could perform the representative occupations ultimately listed by the ALJ in his decision.

Second, Plaintiff expends a great deal of argument concerning the fact that the industrial cleaner job and lab equipment cleaner job both involve the use of chemicals. As correctly pointed out by the Commissioner, the ALJ did not limit Plaintiff to jobs with no exposure to cleaning chemicals. Plaintiff concedes that "there was no limitation quite that specific." Pl. Reply

at 2. There was, in fact, no limitation at all regarding chemicals in the RFC. Plaintiff asserts that "it occurred to those present [at the hearing] that cleaning chemical (sic) can give off fumes." Plaintiff's argument then makes the leap that because the ALJ then posed a hypothetical asking if there were jobs a person could do that did not involve being around "any kind of fumes, dust, gases, odors, cleaning chemicals . . ." that the ALJ eliminated the industrial cleaner job and should have eliminated the lab equipment cleaner job. Plaintiff's logic ignores both the fact there was no limitation to the use of chemicals in the RFC and that the VE testified that despite the fact that both jobs involved the use of chemicals, the DOT indicated that environmental conditions with respect to airborne irritants was not present for either job. Tr. 68, 70. Regardless of whether the ALJ formulated hypotheticals that included no exposure to fumes or limitations on the use of chemicals, his ultimate RFC did not include those limitations and Plaintiff has not presented any evidence to support the contention that such limitations were required.

Finally, Plaintiff's arguments based on "possible" questions that may have been asked at the hearing; which jobs "apparently," or "it seems," or "sounded like" were eliminated from consideration; and the perceived tone or attitude of the VE during the hearing are inapposite. The Court is confined to the record before it. 42 U.S.C.A. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security . . . .")(emphasis added). The transcript reflects that, although the exchange between counsel, the ALJ and the VE was, at times, confused and not all questions were answered completely, Plaintiff's counsel did not seek further clarification. Tr. 71. Futhermore, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th

Cir.2001)(citation omitted). The circumstances here do not establish that the evidence is ambiguous or that the record was inadequate regarding limitations to airborne irritants. The VE clearly testified that the jobs of industrial cleaner and laboratory equipment cleaner did not present hazards from airborne irritants and could be performed by an individual precluded from any concentrated exposure to airborne irritants. Under these circumstances, the VE's testimony as to this limitation had evidentiary value and the ALJ was entitled to rely upon on that testimony in reaching a disability determination. *See Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir.2005) (VE's recognized expertise provides necessary foundation for VE's testimony).

## V. **Remand**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. 42 U.S.C. § 405(g); *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138–39 (9th Cir. 2011) (citing *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be

required to find the claimant disabled were such evidence credited. *Id*. The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (*en banc*)).

Even if all of the requisites are met, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Id*. at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts into serious doubt" whether the claimant is disabled under the Act. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted)).

Here, the ALJ failed to include Plaintiff's PTSD as a severe impairment at Step Two and committed harmful error in failing to account for limitations associated with Plaintiff's mental impairments in his RFC determination and the hypothetical presented to the VE. Thus, the first requisite is satisfied.

Nevertheless, I cannot conclude on this record that "further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. "The touchstone for an award of benefits is the existence of a disability" rather than an ALJ's error. *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir.2015) (citations omitted). Thus, the court must assess whether outstanding issues remain *before* considering whether to credit erroneously rejected evidence as a matter of law. *Id.*

Here, further proceedings are required because the record is incomplete concerning the effects of Plaintiff's PTSD on his ability to perform other work. The ALJ assessed no limitations related to Plaintiff's mental impairments as part of his RFC determination. The ALJ's hypothetical to the VE likewise omitted any limitations. Because the record is not fully developed regarding the extent, if any, of the limitations imposed by Plaintiff's mental impairments, remand for further proceedings is appropriate.

## Conclusion

For the reasons discussed above, the Commissioner's final decision was not based on substantial evidence or free of harmful legal error. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED for further proceedings consistent with this opinion and order.

DATED this 18th day of January, 2018.


   /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge